UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | CV 18-08246 AB (GJSx) | Date: | February 26, 2020 |
|---|---|---|---|

| Title: | *Baxter Bailey & Associates v. Ready Pac Foods, Inc. et al.* |
|---|---|

| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |
|---|---|

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** **[In Chambers] ORDER <u>GRANTING</u> MOTION FOR SUMMARY JUDGMENT**

Pending before the Court is the Motion for Summary Judgment filed by Defendants Ready Pac Foods ("Ready Pac") and TKM-Bengard Farms ("TKM") (collectively, "Defendants") on November 15, 2019. (Dkt. No. 41 ("Mot.").) Plaintiff Baxter Bailey & Associates ("Baxter" or "Plaintiff") timely filed an opposition. (Dkt. No. 42 ("Opp'n").) Defendants filed a Reply (Dkt. No. 43.) Plaintiff, as assignee of several motor carriers, brings five state law contract claims against Defendants. The Court heard oral argument on February 21, 2020. For the following reasons, the Court **GRANTS** Defendants' Motion.

I.  BACKGROUND

A. Plaintiff's "Disputed" Facts

As a preliminary matter, the Court notes that although Plaintiff purports to dispute certain facts in their response to Defendants' Statement of Uncontroverted Facts ("SUF"),

the vast majority of the "disputes" are without merit. Plaintiff's response to Defendants' SUF fails to offer any evidence sufficient to create a material issue. Plaintiff's disputes fall into two categories: discovery based and non-discovery based.

### 1. *Discovery Based Disputes*

Plaintiff objects to Facts 18-23, stating "Plaintiff is unable to confirm or deny this Uncontroverted Issue of Fact, as the defendants have refused to respond to Plaintiff's Propound [*sic*] Discovery Requests." (*See* Dkt. No. 42-2.) Defendants admit they have not responded to the discovery requests served by Plaintiff; however, they assert they have no obligation to respond to those requests as they were served well after the close of discovery. (*See* Dkt. No. 43 at 1-2.) The Court's scheduling order set July 1, 2019 as the non-expert discovery cut off. (*See* Dkt. No. 33 at 3-4.) Plaintiff's discovery was served on October 11, 2019. (Second Declaration of Andrew D. Kehagarias, Dkt. No. 43-1, Exs. A, B.) Defendants were not obligated to respond to these untimely discovery requests, and their failure to do so does not create a dispute now. Plaintiff likewise disputes Fact 24 on the basis that "discovery has not been completed." (*See* Dkt. No. 42-2.) This argument by Plaintiff is insufficient to create a dispute because as previously noted, the discovery cut off was July 1, 2019.

### 2. *Non-Discovery Based Disputes*

The remainder of Plaintiff's disputes similarly fail to create a genuine issue of material fact. Plaintiff disputes Facts 8-10 by asserting an agency relationship, but offers no specific evidence to support this argument. Plaintiff instead cites generally to the complaint and exhibits to the complaint. (*See* Dkt. No. 42-2.) Plaintiff's disputes to Facts 25 and Facts 28-29 offer no citations to any evidence. Plaintiff's disputes to Facts, 32-33 simply state the opposite conclusion of the proffered fact and contain no citations to any evidence.

Accordingly, the Court finds that these disputes are not genuine because the challenged facts are supported by the cited evidence, and Plaintiff's disputes are accompanied by no supporting contrary evidence. Thus, Defendants' proffered facts are undisputed.

### B. Undisputed Facts

Ready Pac is the manufacturer of fresh-cut salads and other produce. (SUF 1.) Ready Pac has written contracts to purchase lettuce from TKM, which requires Ready Pac to pick up the lettuce from one of its cold-storage facilities. (SUF 2-3.) Ready Pac contracted with Expedited Exempt, Inc. ("Expedited") to pick up and transport the lettuce

to Ready Pac's facilities.  (SUF 4.)   In 2016, Ready Pac signed a Master Transportation Agreement ("MTA") with Expedited.  (SUF 5.)   Ready Pac then solicited bids from Expedited, and ultimately awarded them contracts to transport lettuce across certain routes from TKM's facilities in Arizona and Florida to Ready Pac's processors in New Jersey.  (SUF 6-7.)   Ultimately, between December 2017 and March 2018, Ready Pac contracted with Expedited to transport forty-seven (47) shipments of lettuce.  (SUF 8.)   Expedited invoiced Ready Pac at the agreed upon rate, and Ready Pac then paid Expedited for the transportation of the lettuce.  (SUF 9-10.)   It is undisputed that Ready Pac made the payments under the MTA to Expedited for each of the shipments.  (*Id.*)

Expedited, in turn, contracted with several motor carriers (the "Carriers") to physically transport the lettuce to Ready Pac's facilities.   For each delivery, the Carriers were given an Expedited form contract ("Rate Confirmation") that contained the pick-up and destination addresses, quantity and type of lettuce, total rate for the delivery, and other requirements such as the temperature of the refrigerated trailer. (SUF 12.)   Along with the Rate Confirmations, each Carrier was provided with a receipt ("Bill of Lading") that contained additional contractual terms for the delivery and payment for the transportation of the lettuce.   (SUF 15.)

Expedited ceased operations in or around February 2018, and was later subject to a liquidation proceeding in Florida.  (SUF 29-30.)   Baxter, as the assignee of the Carriers who contracted with Expedited, now seeks payment from Ready Pac and TKM for the unpaid freight charges.

## II.   LEGAL STANDARD

A motion for summary judgment must be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).   An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party.   *Anderson*, 477 U.S. at 248–49. A fact is "material" if it may affect the outcome of the case.   *Id.* at 248.   The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   Where the nonmoving party will have the burden of proof at trial, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case.   *Id*.   The nonmoving party then "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in the nonmoving party's favor. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson,* 477 U.S. at 255). Nevertheless, inferences are not drawn out of thin air, and it is the nonmoving party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines,* 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd,* 810 F.2d 898 (9th Cir. 1987). "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).

## III.   DISCUSSION

### A. Ready Pac's Motion is Timely

Baxter argues that Ready Pac's November 15, 2019 Motion is time barred because it was filed more than 30 days after the close of expert discovery on October 7, 2019. (Opp'n at 9.) Because this Court's scheduling order set the deadline to hear Rule 56 motions as December 20, 2019, and Ready Pac's Motion was filed five weeks before that date, their Motion is timely.

### B. Contractual Liability

Defendants first move for summary judgment as to Baxter's breach of contract claim. (Mot. at 15.) Defendants assert that there are two separate sets of contracts containing payment terms in this dispute. First, Defendants argue the MTA contains the payment liability terms from Ready Pac to Expedited. (*Id.* at 13, 20.) Second, Defendants argue the Rate Confirmations contain any terms governing the payment liability for the transportation of the lettuce between Expedited and the Carriers. (*Id.*) Further, Defendants argue that Ready Pac made the payments under the MTA to Expedited, and that a payment to the Carriers would amount to a second payment. (*Id.*) Finally, Defendants argue that none of the Bills of Lading used in for any of the shipments contain any payment liability terms. (*Id.*) Baxter asserts the Bills of Lading used require that Defendants be held jointly and severally liable for Expedited's unpaid contractual obligations to the Carriers. (Opp'n at 12-14.) Baxter states that "[c]ommon law has held from the beginning of time" that joint liability exists, and that this a "Bed Rock Rule of Carriage" that the shipper must be paid. (*Id.* at 6.)

///
///
#

### 1. *Oak Harbor*

Baxter's breach of contract claim rests largely on an interpretation of *Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co.*, 513 F.3d 949 (9th Cir. 2008). One of only two cases referenced in Baxter's opposition, Baxter reads *Oak Harbor* to create joint liability among the shipper/consignor and the consignee of the goods at issue. (Opp'n at 6-7, 12-14.) However, the bills of lading and carrier contracts in *Oak Harbor* are distinguishable from the Bills of Lading and other contracts used in this case.

As noted by Defendants, the *Oak Harbor* court dealt with bills of lading modeled after the federal Uniform Straight Bill of Lading (USBL). (Mot. at 7.) While most motor carriers are no longer required to use the forms containing the default terms required by the USBL, some carriers elect to do so. *See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 478 (9th Cir. 2000). Bills of lading are not necessarily the exclusive means to create a transportation contract. *Id.* at 479. In *Oak Harbor*, the district court found that the parties expressly chose to incorporate the USBL as evidenced by the terms in the bills of lading as well as the use of a standard National Motor Freight Classification ("NMFC") 100-AD form. *Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co.*, 420 F. Supp. 2d 1138, 1144 (W.D. Wash. Mar. 2, 2006) ("*Oak Harbor I*"). In fact, the bills of lading in *Oak Harbor* explicitly stated: "The document is tendered as an individual Bill of Lading. ***All terms and conditions of the straight Bill of Lading and applicable tariff and classifications in effect as of the date hereon apply***." *Id.* (emphasis added).

Here, the undisputed evidence shows that the Bills of Lading in this case do not explicitly adopt the standards set forth in the USBL and are not NMFC 100-AD forms. (*See generally* Declaration of Andrew D. Kehagiaras ("Kehagiaras Decl.") Dkt. No. 43-11, ¶ 8, Ex. 3 ("Bills of Lading"); *see also* Complaint, Dkt. No. 1-1.) Baxter has likewise failed to produce any evidence indicating the parties intended to incorporate the USBL's default payment liability terms into the Bills of Lading at issue. To the contrary, each of the Bills of Lading are silent as to payment liability, and explicitly state that the carrier was to deliver the goods to the consignee "subject only to the terms and conditions of this contract." (*Id.*) While the Bills of Lading left open the possibility that additional terms may be imposed on the reverse side of the document, the undisputed facts show that none of the Bills of Lading at issue contained any additional terms. (SUF 27.)

Baxter argues that even though the Bills of Lading are silent as to the payment terms, "this does not mean that by operation of law payment terms are not inserted and applied to be applicable and comport the controlling judicial principles set forth in both

[*Oak Harbor*] or independently [by 49 U.S.C. § 13706]." (Opp'n at 14.) However, Baxter offers no authority for these assertions. First, as previously discussed, *Oak Harbor's* holding does not extend to the Bills of Lading at issue in this case because there is no indication that they mirror those used in the USBL or intended to incorporate the USBL's default terms and conditions. Second, the Title 49 regulations cited by Baxter are inapplicable to this case because the shipments at issue do not fall within the either of the narrow exceptions for federal regulation: (1) joint motor-water shipments involving noncontiguous trade, or (2) shipments involving residential household goods. *See Radiant Glob. Logistics, Inc. v. En Pointe Techs., Inc.*, No. CV 12-cv-06078 DMG (MANx), 2012 U.S. Dist. LEXIS 115269 at *4-*7 (C.D. Cal. Aug. 14, 2012). Here, the transportation is solely by motor carrier within the continental United States, and involves a federally-exempt commodity. Thus, neither exception applies.

Accordingly, the Bills of Lading do not generate payment liability for Defendants under the USBL or 49 U.S.C. section 13706.

### C. Agency

Baxter's next argument is that liability should attach because Expedited was acting as Defendants' agent when it entered into the Rate Confirmations with the Carriers. (Opp'n at 10-11.) "An agency is either actual or ostensible." Cal. Civ. Code § 2298. Defendants argue that Expedited was neither the actual or ostensible agent of Defendants. (Mot. at 15-17.) "Only when the essential facts are not in conflict will an agency determination be made as a matter of law." *Wickham v. Southland Corp.*, 168 Cal. App. 3d 49, 55 (1985).

#### *1. Actual Agency*

"An agency is actual when the agent is really employed by the principal." Cal. Civ. Code § 2299. Defendants argue no such employment existed. Rather, Defendants argue under the MTA, Expedited was only an independent contractor. (Mot. at 15-16.) Baxter's opposition offers no argument or evidence to the contrary. Thus, the Court finds that no actual agency existed.

#### *2. Ostensible Agency*

"An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." Cal. Civ. Code § 2300. Whether or not an ostensible agency relationship exists is dependent on representations made by the principal to a third party. *See Boren v. State Personnel Board*, 37 Cal. 2d 634, 643 (1951). Accordingly, the Court must

examine what representations Defendants made to the Carriers that would create an ostensible agency relationship.

Defendants argues that no such relationship exists.  (Mot. at 16.)   Defendants state "[t]here is no evidence that either Ready Pac or TKM caused any of the Carriers to believe that Expedited was the agent of either Ready Pac or TKM.  To the contrary, neither Ready Pac nor TKM knew of any Carrier's identity before any given transportation."  (*Id.*)   Baxter argues that Ready Pac was the "disclosed principal" and that Expedited was not acting as an independent contractor, but rather as Ready Pac's transportation broker or agent.  (Opp'n at 10-12.)

Baxter contends that the MTA governing the business relationship between Ready Pac and Expedited was one "where [Ready Pac] would provide shipments [and] [Expedited] would provide its transportation agent/broker services. . . ."  (*Id.* at 10.)   In circular fashion, Baxter claims "[c]learly, the above provides evidence to establish an agency [between Ready Pac and Expedited]" and this is sufficient to create a triable fact.  (*Id.*)

However, Baxter's argument mischaracterizes the purpose of the MTA.  As noted by Defendants, the primary purpose of the MTA was to transport the shipments.  (Mot. at 17; Declaration of Patrick Owens ("Owens Decl."), Dkt. No. 41-2, ¶ 9, Ex. A (MTA).)  While slight, this distinction makes a difference.  Ready Pac did not hire Expedited to serve as an agent or broker to arrange transportation, but rather to actually transport the goods themselves. (*Id.*, Ex. A ¶ 4.)   Expedited's Rate Confirmation contracts with the Carriers were not part of the MTA, but instead are a separate set of contracts.  (Mot. at 3; Kehagiaras Decl., ¶ 6, Ex. 1 (Rate Confirmations).)   Thus, the MTA alone does not make Expedited the "agent/broker" of Ready Pac.

Baxter additionally argues that despite the "Independent Contractor" label that Ready Pac has given to Expedited under the MTA, Expedited was still acting as Title 49 broker.  (Opp'n at 8, 10-13.)   Without citing any evidence, Baxter states that Ready Pac "arranged all of the shipments, provided the shipments, identified the shippers, consignees, place of pick up, place of delivery, and dates and timing of the deliveries." (*Id.* at 11.)   Based on these factors, Baxter argues that Expedited cannot be an independent contractor and that Ready Pac has used the independent contractor label "as an attempt to avoid legal liability."   (*Id.*)   But Expedited's status as an independent contractor is not determinative of whether or not Ready Pac represented to the Carriers that Expedited was acting as its agent.   The only evidence Baxter offers in support of an ostensible agency theory are the declarations of the various Carrier owner/operators (the "Carrier Declarations").

*i.     Defendants' Objections to the Carrier Declarations*

Defendants have objected to the Carrier Declarations on several grounds, including lack of foundation, lack of personal knowledge, statements consisting of a legal conclusion and speculation.  (*See generally* Defendants' Evidentiary Objections, Dkt. Nos. 43-5-43-13.)   Baxter has offered supplemental replies to these objections (Dkt. Nos. 44-1-44-9).   Defendants object to the supplemental replies, requesting they be stricken for violating Local Rule 7-10. (Dkt. No. 45.)   Because Baxter has not requested leave of this Court to file the supplemental replies to Defendants' evidentiary objections, those supplemental replies are stricken.

Turning to the Carrier Declarations, they repeatedly assert "[Expedited] acted as a transportation agent and/or broker for and/or on behalf of [Ready Pac] where [Expedited] was authorized by [Ready Pac] to engage motor carriers/trucking companies to provide transportation services. . . ."   (*See, e.g.*, Declaration of BP Freight Inc. ("BP Freight Decl."), Dkt. No. 42-5, ¶ 2.)   Defendants also object to the language "[b]oth [Ready Pac] and/or TKM's Transportation Broker [Expedited] and its disclosed principal [Ready Pac]. . . ." (*Id.*, ¶ 5.)   Defendants' objections are sustained.[1]   At bottom, the Carrier Declarations attempt to recast Ready Pac's relationship with Expedited as one of agency, but offers no support or foundation for these speculative and conclusory statements.   Further, to the extent the Carrier Declarations describe the actions of Expedited, they do not offer any evidence showing that either TKM or Ready Pac manifested this agency relationship to the Carriers.   To the contrary, the undisputed facts show that TKM had no knowledge or identifying information regarding the Carriers until they arrived to transport the cargo.   (SUF 20.)   Likewise, Ready Pac had no specific knowledge of the Carriers until they later sought payment.   (SUF 31.)   If Defendants had no knowledge in advance which Carrier was transporting what cargo, it does not follow that they held out Expedited as their agent to the Carriers before they agreed to transport the cargo.

Because the material facts are not in dispute and Baxter has failed to offer admissible evidence that indicates that Expedited was acting as either an actual or ostensible agent for Ready Pac or TKM, Defendants are entitled to summary judgment as to Baxter's breach of contract claim.

**D. Common Counts**

Defendants also move for summary judgment as to Baxter's remaining claims for

---

[1] To the extent any other objected-to evidence is relied on in this order, those objections are overruled. Any remaining objections are also overruled as moot. *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1118 (E.D. Cal. 2006).

(1) Open Book Account, (2) Account Stated, (3) Quantum Meruit, and (4) Unjust Enrichment. (Mot. at 21-24.)

### 1. *Open Book Account*

California law defines a book account as "a detailed statement which constitutes the principal record of one or more transactions between a debtor and a creditor." Cal. Civ. P. Code § 337a. The statement must be kept "(1) in a bound book, or (2) on a sheet or sheets fastened in a book or to backing but detachable therefrom, or (3) on a card or cards of a permanent character, or is kept in any other reasonably permanent form and manner." *Id.* "The only essential allegations of a common count are (1) the statement of indebtedness in a certain sum, (2) the consideration, *i.e.*, goods sold, work done, etc., and (3) nonpayment." *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 460 (1997) (internal quotation marks and citation omitted).

Defendants argue that none of the elements for an open book account are met. (Mot. at 21.) The Court agrees. Baxter's opposition provides the Court with no evidence of any of these elements. (*See generally* Opp'n 15-17.) Instead, Baxter, citing no authority, states an "Open Book account is based on the agreed extension of credit with the promise to pay" and this cause of action was "created by the conduct of the parties which formed an implied in law contract." (*Id.* at 16.) Baxter again asserts this is again due to the alleged agency relationship between Defendants and the Carriers and states, without identifying any evidence, "there is a critical and crucial issue of material fact as to whether the conduct of [Defendants] formed an Implied in Law Contract. . . ." (*Id.* at 16-17.) However, for the same reasons previously discussed, Baxter has failed to establish a material issue regarding the existence of an agency relationship. Accordingly, Defendants are entitled to summary judgment as to Baxter's claim for Open Book Account.

### 2. *Account Stated*

Under California law, a claim for account stated has three elements: "(1) previous transactions between the parties establishing the relationship of debtor and creditor; (2) an agreement between the parties, express or implied, on the amount due from the debtor to the creditor; (3) a promise by the debtor, express or implied, to pay the amount due. *Zinn v. Fred R. Bright Co.*, 271 Cal. App. 2d 597, 600 (1969) (citations omitted).

Defendants again argue that Baxter has failed to produce evidence of any of the three elements. (Mot. at 22.) Baxter maintains that "[a]ll that was required that the owing party received a statement of debt and there was a failure to pay." (Opp'n at 16.) While that may be true at the pleading stage, Baxter provides the Court with no evidence

of any new agreement between Defendants and the Carriers. Accordingly, Defendants are entitled to summary judgment as to Baxter's claim for Account Stated.

### 3. *Quantum Meruit*

Under the doctrine of quantum meruit, "a plaintiff who has rendered services benefitting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the defendant." *In re De Laurentiis Entm't Group Inc.*, 963 F.2d 1269, 1272 (9th Cir. 1992). Unjust enrichment results when the defendant receiving the benefits fails to provide compensation to the plaintiff. *Id.* "To recover on a claim for the reasonable value of services under a quantum meruit theory, a plaintiff must establish both that he or she was acting pursuant to either an express or implied request for services from the defendant and that the services rendered were intended to and did benefit the defendant." *Ochs v. PacifiCare of California*, 115 Cal. App. 4th 782, 794 (2004).

Defendants argue Baxter has not produced any evidence to demonstrate an understanding between Defendants and the Carriers. (Mot. at 22-23.) Instead, Defendants argue that any expectation that Carriers had regarding payment was created by Expedited via the Rate Confirmations. (*Id.* at 23.) Baxter states "Quantum Meruit is based upon a theory a party had requested services or goods sold by another for which the reasonable value of said services or goods are due and owing." (Opp'n at 16.) Because Baxter offers no evidence beyond a recitation of legal theory, Defendants are entitled to summary judgment as to Baxter's quantum meruit claim.

### 4. *Unjust Enrichment*

Baxter asserts that Defendants would be unjustly enriched if it is permitted to retain the benefit of the goods delivered without payment. However, this District does not recognize unjust enrichment as a standalone claim: "the majority of state and federal district courts in California do not recognize unjust enrichment as a freestanding claim." *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1166-67 (C.D. Cal. 2012). Rather, unjust enrichment is just a form of remedy under California law. *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010); *In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1114 (C.D. Cal. 2012) (holding unjust enrichment is a theory that permits recovery on other recognized causes of action).

Defendants' Motion raises this argument and Baxter offers no response. Defendants are entitled to summary judgment as to Baxter's unjust enrichment claim.

///
#

## IV. CONCLUSION

For all the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment. (Dkt. No. 41.) Defendants are **ORDERED** to file a Proposed Judgment within seven (7) days of this order.

**IT IS SO ORDERED.**